UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-80136-CR-ALTMAN

**UNITED STATES**,

   *Plaintiff*,

v.

**DARRELL MATHENEY**,

   *Defendant*.

_____/

## ORDER

Darrell Matheney, a convicted drug dealer with a lengthy criminal history, asks for compassionate release because of the COVID-19 pandemic. *See* Motion for Compassionate Release and Reduction in Sentence ("Motion") [ECF No. 33]. We deny his Motion for three reasons. *First*, the § 3553(a) factors weigh against a reduction. *Second,* he's failed to show that his circumstances are either extraordinary or compelling. *Third*, he's failed to establish that he no longer poses a danger to his community.

### THE FACTS

Darrell Matheney is 36 years old. *See* PSI [ECF No. 27] at 3. In 2016, Matheney pled guilty to one count of distributing hydromorphone, a Schedule II controlled substance commonly referred to as "Dilaudid," in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(C). *See* Judgment [ECF No. 29] at 1; Indictment [ECF No. 12] at 1. On January 11, 2017, Matheney was sentenced to 120 months in prison, to be followed by 60 months of supervised release. *See* Judgment [ECF No. 29] at 1–3. Matheney was a "career offender" because he was at least 18 years old at the time of his offense, his offense was a felony controlled substance offense, and he had at least two prior felony convictions for controlled substance offenses. *See* PSI [ECF No. 27] at 6; U.S.S.G. § 4B1.1(a).

In September of 2020, Matheney filed a Motion for Compassionate Release and Reduction in Sentence. *See generally* Motion. He justified his Motion by pointing to: (1) his hypertension and its co-morbidity with COVID-19; (2) an alleged exposure to black mold and a lack of adequate medical care; and (3) excessively cold temperatures in his prison cell. *See id.* Matheney doesn't say what percentage of his sentence he's served. Nor does he outline his projected release date. According to BOP, though, Matheney has a projected release date of February 9, 2025. *See* BUREAU OF PRISONS INMATE LOOKUP, bop.gov/inmateloc/ (last accessed July 22, 2021). He therefore has 43 months—or about 36%—of his sentence remaining.

## ANALYSIS

Section 3582 sets out the order in which this Court should analyze a criminal defendant's entitlement to a sentencing reduction. *First*, when the defendant brings the motion himself, the Court must ascertain whether he "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or [whether there has been a] lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(a). *Second*, the Court should "consider[] the factors set forth in section 3553(a) to the extent that they are applicable." *Id. Third*, the Court should turn to the "extraordinary and compelling reasons" test, as outlined in U.S.S.G. § 1B1.13 cmt. n.1. And *fourth*, the Court should determine whether the defendant poses a "danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." *Id.*; *see United States v. Stuyvesant*, 454 F. Supp. 3d 1236, 1238 (S.D. Fla. 2020) (applying this framework). We discuss each of these four steps in turn.

### I. Exhaustion of Administrative Rights to Appeal

Matheney's request for compassionate release was denied by Warden Lane at FCI Coleman Low on August 18, 2020. *See* Motion at 28. And the Government seems to concede that Matheney has exhausted his administrative remedies. *See* Response in Opposition to Motion for Resentencing

("Response") [ECF No. 37] at 4. We're thus free to consider the merits of Matheney's Motion.

## II. 18 U.S.C. § 3553(a)

Section 3553(a) requires the district court to consider (among other things) "the nature and circumstances of the offense and the history and characteristics of the defendant," and "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, . . . to provide just punishment for the offense," "to afford adequate deterrence to criminal conduct," and "to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(1)–(2).

"Where district courts consider the § 3553(a) factors, it is not necessary for the court to state on the record that it has explicitly considered each of the § 3553(a) factors or to discuss each factor." *United States v. Fidalgo*, 2021 WL 1750120, at *2 (11th Cir. 2021) (citing *United States v. Kuhlman*, 711 F.3d 1321, 1326 (11th Cir. 2013)). "[A]n acknowledgement by the district court that it considered the § 3553(a) factors is sufficient." *Fidalgo*, 2021 WL 1750120, at *2 (citing *United States v. Turner*, 474 F.3d 1265, 1281 (11th Cir. 2007)).

In his Motion, Matheney doesn't advance any arguments under § 3553(a). *See generally* Motion. He does, however, describe himself as a "non-violent offender," *see* Motion at 21—a characterization we charitably construe as an attempt to paint his "history and characteristics" in a more favorable light. We're not persuaded. To understand why, let's look at the § 3553(a) factors in some more detail.

First up is the "nature and circumstances of the offense." § 3553(a)(1). While Matheney's offense may be non-violent, his crime *was* serious. Matheney was, after all, convicted of poisoning his community with Dilaudid—a known opioid. And drug dealing—whether it's cocaine, heroin, or opioids—ruins lives, destroys communities, and warrants stiff penalties. *Cf.* U.S. Sentencing Comm'n, *Special Report to the Congress: Cocaine and Federal Sentencing Policy* 3–4 ("Regardless of the quantity of drug involved, distributing any of the primary domestic illegal drugs—heroin, cocaine (powder or crack), methamphetamine, PCP, LSD, or marijuana—is a serious crime. All of these drugs cause great harm

3

to individuals and to society at large, and the stern punishments meted out under federal law for drug distribution reflect congressional, executive, and Sentencing Commission judgment about the gravity of these offenses and the menace caused by these drugs."). We thus cannot agree that the seriousness of a crime depends solely (as Matheney would have us believe) on whether, in committing it, the defendant used physical force against another.

Nor do Matheney's "history and characteristics," § 3553(a)(1), justify his release. Matheney has racked up an extensive criminal history—with prior offenses ranging from the not-so-serious (trespassing and driving with a suspended license) to the mildly serious (possessing cocaine and grand theft auto) to the very serious (selling heroin). *See* PSI § 3553(a) [ECF No. 27] at 7–2. Indeed, as the PSI makes clear, Matheney was convicted of some of these offenses multiple times. *See id.* Matheney's lengthy and repetitive criminal history weighs heavily against his request for compassionate release.

The next factor—the need for the sentence imposed "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," § 3553(a)(2)(A)—likewise cuts against Matheney. As we just explained, Matheney's criminal history is both lengthy and repetitive: that is, he's committed the same crime multiple times. *See* PSI [ECF No. 27] at 7-22. And many of these prior convictions, like his most recent offense, are serious drug offenses. *See id.* Matheney wants the Court to ignore his propensity for recidivism and cut out the remaining 36% of his sentence. This the Court will not do. To release Matheney now would be to send precisely the wrong message: that drug crimes aren't serious, that the dangers of selling opioids are overblown, and that the penalties set out in our drug laws needn't be strictly followed. Releasing Matheney, in other words, would *decrease*, rather than increase, the citizenry's respect for the law.

Finally, we've considered the need "to provide adequate deterrence to criminal conduct" and "to protect the public from further crimes of the defendant." § 3553(a)(2)(B), (C). Matheney's long criminal history strongly suggests that he doesn't obey the law, that he doesn't respect the law, and

4

that there's very little any judge—state or federal—can do to stop him from continuing to break the law. Put differently, keeping Matheney in prison seems to be the only way to deter him (and others like him) from committing future crimes.[1]

In sum, the Court has considered the § 3553(a) factors and finds that they weigh against a reduction here.

### III.     18 U.S.C. § 3582

District Courts have no inherent authority to modify a prison sentence. *United States v. Diaz-Clark*, 292 F.3d 1310, 1315, 1319 (11th Cir. 2002). Instead, the "authority of a district court to modify an imprisonment sentence is narrowly limited by statute." *United States v. Phillips*, 597 F.3d 1190, 1194–95 (11th Cir. 2010). The statute that governs sentence reductions for compassionate medical release provides, in pertinent part, as follows:

> **(c) Modification of an imposed term of imprisonment.–** The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> > (i)     extraordinary and compelling reasons warrant such a reduction; or
> >
> > (ii)    the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the

---

[1] Matheney never suggests that compassionate release is necessary to avoid "unwarranted sentencing disparities"—another factor under § 3553(a).

>    community, as provided under section 3142(g); and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; and
>
> (B) the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure[.]

18 U.S.C. § 3582(c)(1).

Because Matheney is not "at least 70 years of age," he does not qualify for release under § 3582(c)(1)(A)(ii). The viability of his request thus turns on the "extraordinary and compelling reasons" test in § 3582(c)(1)(A)(i). But § 3582 never describes the kinds of "[e]xtraordinary and compelling reasons" that might "warrant a reduction." Under 28 U.S.C. § 994, however, the United States Sentencing Commission (the "Commission") is authorized to "describe what should be considered extraordinary and compelling reasons for sentence reduction [under 18 U.S.C. § 3582]." 28 U.S.C. § 994(t). And the Commission has helpfully defined the contours of the test as follows:

> **1. Extraordinary and Compelling Reasons.**—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> **(A) Medical Condition of the Defendant.**
>
> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (ii) The defendant is
>
>> (I) suffering from a serious physical or medical condition,
>>
>> (II) suffering from a serious functional or cognitive impairment, or
>>
>> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

>   **(B) Age of the Defendant.**—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

U.S.S.G. § 1B1.13 cmt n.1.

The reference to "subdivision (2)" requires Matheney to show that he is "not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). And § 3142(g), in turn, instructs federal courts to consider the following factors when determining whether a defendant poses a danger to the safety of any other person or the community:

>   **(g) Factors to be considered.**—The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning—
>
>   (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
>   (2)  the weight of the evidence against the person;
>
>   (3) the history and characteristics of the person, including—
>
>   >   (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>   >
>   >   (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
>   (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

18 U.S.C. § 3142(g).

Matheney bears the burden of establishing both that his circumstances qualify as "extraordinary and compelling reasons" and that he no longer represents a danger to any other person or the community. *See United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013); *see also Cannon v. United States*, 2019 WL 5580233, at *2 (S.D. Ala. Oct. 29, 2019); *United States v. Heromin*, 2019 WL 2411311, at *2 (M.D. Fla. June 7, 2019).

As a preliminary matter, Matheney cannot satisfy the "Age of the Defendant" test because he is 36 years old, not 65, and has not alleged any age-related decline. His request for relief, then, hinges on his ability to meet either of the two elements of the "Medical Condition of the Defendant" test. The first element requires him to show that he suffers from a "terminal illness." U.S.S.G. § 1B1.13 cmt n.1(1)(A)(i). The second requires him to establish that he suffers from any of three conditions "that substantially diminishes [his] ability . . . to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt n.1(1)(A)(ii).

Matheney points to four things that (in his view) leave him with "a substantial probability of severe long-term physical damage or death" if he were to contract COVID-19. *See* Motion at 2. *First*, he says that he suffers from hypertension. *Id.* at 13. *Second*, he claims that he's a "life-time smoker." *Id.* at 3. *Third*, he claims to be suffering from an exposure to black mold that's "all throughout the air system" at FCI Coleman Low. *Id. Fourth*, he argues that excessively cold temperatures at FCI Coleman Low "aggravate[ his] respiratory problems." *Id.*

But these factors—even taken together—don't create the kinds of "extraordinary and compelling circumstances" that would entitle Matheney to relief. Starting with hypertension, Matheney doesn't dispute the Warden's assertion that he's "receiving medical treatment" for his hypertension and that his "condition is stable." Motion at 28; *see also* Bureau of Prisons Health Services Clinical

8

Encounter [ECF No. 40-5] at 1 (suggesting that Matheney enjoys normal pulmonary and cardiovascular functioning). Additionally, Matheney's claim that he's been exposed to black mold is entirely unsupported. *See generally* Motion. In fact, he cites no evidence or study for his position that black mold is even present at FCI Coleman Low or that, if it is, he's ever been exposed to it. *Id.* He similarly produces no evidence of respiratory problems—either from smoking or cold temperatures. *Id.* As to this last point, Matheney hasn't shown that FCI Coleman is unduly cold or that, if it were, cold temperatures somehow exacerbate the symptoms of COVID-19. He's thus failed to establish that these conditions justify his early release. *Cf. United States v. Ballesteros*, 2020 WL 2733647, at *1 (S.D. Fla. May 26, 2020) ("[Defendant] has not included any facts on the severity of his asthma or hypertension, but they do not appear to be at such an acute level that his release is warranted after serving only 35% of his sentence."); *United States v. Brady*, 2020 WL 2512100, at *3 (S.D.N.Y. May 15, 2020) ("While [the Defendant's] medical conditions are serious, release is not justified because those conditions are stable and the Defendant has managed them in prison, he is located at a federal medical facility that is equipped to provide care both for his existing conditions and should he contract COVID-19, and because release would provide an undue windfall that would severely undermine the goals of the sentence this Court imposed.").[2]

Even accepting that these factors *could* justify early release, however, Matheney's Motion still fails. He, after all, never describes his conditions as (1) a "serious physical or medical condition," (2) "a serious functional or cognitive impairment," or (3) a part of his "deteriorating physical or mental health because of the aging process," as required by U.S.S.G. § 1B1.13 cmt n.1(1)(A)(ii). *See generally*

---

[2] We note, too, that Matheney is housed at FCI Coleman Low, *see* Motion at 2, where (as of this writing) only one inmate is COVID-19 positive, *see* Bureau of Prisons COVID-19 Cases, available at https://www.bop.gov/coronavirus/ (last accessed Aug. 3, 2021).

9

Motion. Nor does he contend that these diseases qualify as "terminal" illnesses under U.S.S.G. § 1B1.13 cmt n.1(1)(A)(i). *See id.*

But here's the biggest problem with Matheney's Motion: Whatever the merits of his COVID-19 arguments when he filed his Motion, there's little to recommend them today. For one thing, the BOP has vaccinated the *vast majority* of its inmates and staff. *See id.* (noting that the BOP has administered over 205,800 doses of COVID-19 vaccines to its 130,000 inmates and 36,000 staff members). Since Matheney should have gotten his vaccine already, he has nothing to fear from COVID-19. *See United States v. Broadfield*, --- F. 4th ---, 2021 WL 3076863, *2 (7th Cir. July 21, 2021) (holding, in a case involving a defendant with chronic breathing problems, that COVID-19 was not an extraordinary and compelling reason justifying the defendant's compassionate release because the BOP had made an effective vaccine available to him).[3]

The Court acknowledges that the spread of COVID-19 has been pervasive and devastating. It has challenged our institutions, undermined Americans' ability to maintain their economic security, and altered the way people interact. More fundamentally, it goes without saying, the pandemic has resulted in widespread suffering. In the United States alone, more than 35,000,000 people have tested positive for the disease, and over 611,000 Americans have died from it. *See* CDC, *COVID Data Tracker*, available at https://covid.cdc.gov/covid-data-tracker/#cases_totalcases (last accessed Aug. 3, 2021).

But "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release[.]" *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). Additionally, "the BOP Director has not found COVID-19 alone to be a basis for compassionate release." *United States v. Harris*, 2020 WL 1969951, at *2 (M.D. Fla. Apr. 24,

---

[3] Of course, if Matheney has chosen *not* to receive a COVID-19 vaccine, then the dangers he faces from COVID-19 are entirely of his own creation and, in that way, cannot constitute extraordinary or compelling circumstances.

2020) (citing *United States v. Eberthard*, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020)). The Court sees no reason to depart from the BOP's well-reasoned view on this question.

Because Matheney has not shown that his circumstances are either "compelling" or "extraordinary," his Motion must be **DENIED**.

### IV. 18 U.S.C. § 3142

Even if Matheney *had* shown compelling circumstances, his Motion would still be denied because he has failed to establish that he no longer poses a danger to his community. As the relevant Sentencing Guidelines provision makes clear, the "extraordinary and compelling reasons" test only applies if "the defendant meets the requirements of subdivision (2)"—that is, only if the Defendant demonstrates that he no longer poses a threat to society, as defined by 18 U.S.C. § 3142.

Matheney has failed to show that he represents no such danger. *See generally* Motion (failing to argue any of the § 3142 factors). And it was indisputably his burden to do so. *See Cannon*, 2019 WL 5580233, at *2; *Heromin*, 2019 WL 2411311, at *2. This failure is thus fatal to his claim.

### V. Home Confinement

In the alternative, Matheney seeks "transfer to home confinement." Motion at 21. But we have no authority to direct the BOP to transfer him to home confinement. As the Eleventh Circuit has held, "[i]t is undisputed that the authority to place a prisoner in home confinement rests solely with the BOP rather than the judiciary. And while federal law permits district courts to make the type of recommendation the [the defendant] requested, any such recommendation would have been non-binding." *United States v. Groover*, 844 F. App'x 185, 189 (11th Cir. Feb. 4, 2021) (citation omitted).

Of course, we could achieve the same result by simply reducing Matheney's sentence to time-served and then "impos[ing] a term of supervised release equal to the unserved time and order, as a condition of that supervised release, that the defendant be confined to his home." *United States v. Spencer*, 2020 WL 5498932, at *2 (6th Cir. Sept. 2, 2020); *United States v. Israel*, 2020 WL 3893987, at *9

11

(S.D. Fla. July 10, 2020) ("Although the Court does not have the authority to order a prisoner's release to home confinement, the Court does have the authority to reduce a defendant's sentence to time-served, impose a term of supervised release, and order home confinement as a condition of supervised release."). To do this, though, we'd have to conclude that Matheney has carried his burden of showing that he's entitled to that reduction—which, for the reasons set out above, he's failed to do.

***

To recap: Matheney's circumstances are neither extraordinary nor compelling, the § 3553(a) factors counsel against a release or reduction in sentence, and he's failed to establish that he's no longer a danger to his community. Accordingly, the Court hereby **ORDERS and ADJUDGES** that Matheney's Motion for Reduction in Sentence and Compassionate Release [ECF No. 33] is **DENIED**.

**DONE AND ORDERED** in Miami, Florida, this 3rd day of August 2021.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record